**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

|  |  |  |
|---|---|---|
| AMPHASTAR PHARMACEUTICALS INC., | ) | Civil Action No. <u>1:21-cv-1922</u> |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR** |
| | ) | **DECLARATORY JUDGMENT** |
| ELI LILLY AND COMPANY, | ) | |
| | ) | **PUBLIC REDACTED VERSION** |
| Defendant. | ) | |

Plaintiff Amphastar Pharmaceuticals Inc. ("Plaintiff" or "Amphastar"), brings this Complaint against Eli Lilly and Company ("Defendant" or "Lilly") seeking a declaration that Amphastar has not infringed, does not infringe, and will not infringe any valid claim of U.S. Patent No. 7,517,334 ("the '334 patent"). Amphastar brings this suit to obtain patent certainty under 21 U.S.C. § 355(j)(5)(C)(i)(I) and to obtain final FDA approval to market its generic teriparatide injection product at the earliest possible date pursuant to 21 U.S.C. § 355(j)(5)(D)(i)(I).

## NATURE OF THE ACTION

1.      This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*; the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; and the Hatch-Waxman Act, 21 U.S.C. § 355(j) *et seq.* The Hatch-Waxman Act governs the U.S. Food and Drug Administration ("FDA")'s approval of both new and generic drugs. Amphastar seeks FDA approval for the commercial manufacture, use, importation, offer for sale, and sale of a generic version of Forteo® (Teriparatide Injection USP) 600mcg/2.4mL (250 mcg/mL) prefilled pens as described in Amphastar's Abbreviated New Drug Application ("ANDA") No. 213641 ("Amphastar's ANDA"). Amphastar's ANDA contains a certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV).

2.      In accordance with 21 U.S.C. § 355(j)(2)(B) and 21 C.F.R. § 314.95, Amphastar sent notice to Lilly of Amphastar's Paragraph IV certification to the '334 Patent and provided an Offer of Confidential Access to its ANDA No. 213641. According to the terms of the Offer of Confidential Access, Lilly reviewed agreed-upon sections of Amphastar's ANDA and samples of the Amphastar injection device, but did not bring a suit for patent infringement within 45 days of receiving notice of Amphastar's Paragraph IV certification, even though it had an opportunity to

bring one.  *See* 21 U.S.C. § 355(j)(5)(C).

3.      The Hatch-Waxman Act provides for a "civil action to obtain patent certainty"

when a generic applicant makes such certifications, and the patent owner does not bring an

action within 45 days of receiving notice of the Paragraph IV certification.  *See* 21 U.S.C. §

355(j)(5)(C)(i)(I)(aa)-(cc).  This declaratory judgment provision in the Hatch-Waxman Act aims

to encourage early resolution of patent disputes, and prevent brand-name drug companies from

using tactics that forestall the competing generic drug makers from entering the market.  *See*

*Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.,* 527 F.3d 1278, 1285 (Fed. Cir. 2008).

4.      The Medicare Modernization Act of 2003 ("MMA") sets forth certain provisions

by which the first applicant(s) to file an ANDA with a Paragraph IV certification as to a drug (a

"first ANDA filer") would forfeit the generic exclusivity which the Hatch-Waxman provides to

first ANDA filers.  For example, the entry of a final judgment of non-infringement with respect

to the patents against which a first ANDA filer submitted Paragraph IV certifications, regardless

of whether or not those patents are asserted against subsequent ANDA filers, will cause the first

ANDA filer to forfeit its exclusivity.  21 U.S.C. § 355(j)(5)(D)(i)(I)(bb)(AA).

5.      Amphastar's complaint seeks a judgment to obtain patent certainty that

Amphastar's generic 600mcg/2.4mL (250 mcg/mL) prefilled teriparatide pens do not infringe

any valid and enforceable claim of the '334 Patent.  Such judgment would trigger forfeiture of

the first ANDA applicant's 180-day exclusivity, which presently blocks the FDA from approving

Amphastar's ANDA, so as to enable Amphastar to bring its prefilled teriparatide pens to market

at the earliest possible date allowed under applicable statutory and FDA regulatory provisions.

Moreover, in the absence of a declaratory judgment, Lilly could sue Amphastar at any time,

whether before or after Amphastar enters the market, and could potentially seek a preliminary

injunction which could have the effect of delaying Amphastar's market entry even beyond the expiration of the first-filer's exclusivity.

## THE PARTIES

6.      Plaintiff Amphastar Pharmaceuticals, Inc. is a corporation organized and existing under the laws of Delaware and having a principal place of business at 11570 Rancho Cucamonga, California 91730.

7.      Defendant Eli Lilly and Company is a corporation organized and existing under the laws of Indiana and having its principal place of business at Lilly Corporate Center, 893 Delaware Street, Indianapolis, Indiana 46285.

8.      Based on publicly available information, Lilly is the owner and assignee of record with the United States Patent and Trademark Office ("USPTO") of the '334 Patent.

## JURISDICTION AND VENUE

9.      This is a Complaint for a declaratory judgment that Amphastar has not, does not, and will not infringe the claims of the '334 Patent, which arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*; the Hatch-Waxman Act, 21 U.S.C. §§ 355(j) *et seq.*; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

10.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action involves substantial claims arising under the United States Patent Act (35 U.S.C. §§ 1 *et seq.*)*,* the Declaratory Judgment Act (28 U.S.C. §§ 2201 & 2202), 21 U.S.C. § 355(j)(5)(C), and 35 U.S.C. § 271(e)(5).

11.      An actual controversy exists between Amphastar and Lilly by virtue of Lilly's listing of the '334 Patent in the Orange Book for Forteo®, Amphastar's filing of ANDA No. 213641 with the FDA under § 505(j) of the Federal Food Drug and Cosmetic Act, 21 U.S.C.

§355(j), for generic versions of 600mcg/2.4mL (250 mcg/mL) prefilled teriparatide pens that are

bioequivalent to Lilly's drug Forteo® ("Amphastar's ANDA Product"), and Lilly's failure to

bring suit against Amphastar in connection with Amphastar's filing of ANDA No. 213641 or any

product described therein.  Additionally, another applicant was the first to submit an ANDA

referencing the 600mcg/2.4mL (250 mcg/mL) strength of Forteo®, and therefore retains

eligibility for 180-day marketing exclusivity, which indefinitely blocks approval of any

subsequently filed ANDA, such as Amphastar's ANDA.  Only a final decision of

noninfringement or invalidity of the '334 Patent will lift that regulatory block.  *See Apotex, Inc.*

*v. Daiichi Sankyo, Inc.*, 781 F.3d 1356, 1368-69 (Fed. Cir. 2015).

   12.   Amphastar contends that it has a right to engage in making, using, offering to sell,

and selling its products described in the Amphastar ANDA, without license from Lilly.

   13.   This Court has personal jurisdiction over Lilly because Lilly is a corporation

existing under the laws of the State of Indiana and/or having a principal place of business in

Indiana.

   14.   This Court also has personal jurisdiction over Lilly because Lilly transacts

business in the State of Indiana and has purposefully availed itself of the privileges of doing

business in Indiana.

   15.   Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), (c) and

1400(b), because the Southern District of Indiana is the judicial district where Lilly resides

and/or because the Southern District of Indiana is a judicial district where Lilly has committed

acts that give rise to Amphastar's declaratory judgment claims as alleged in this Complaint, and

where Lilly has a regular and established place of business, e.g., its headquarters in Indianapolis,

Indiana.

## HATCH-WAXMAN ACT OVERVIEW

16.    In 1984, Congress passed the Drug Price Competition and Patent Term

Restoration Act, commonly referred to as the Hatch-Waxman Act.  *See* 21 U.S.C. § 355 and 35

U.S.C. §§ 156 and 271(e).  The Hatch-Waxman Act was intended to encourage generic-drug

competition while leaving intact incentives for research and development of new drugs by

"branded'' drug companies.  *See* H.R. Rep. No. 98-857, pt. I at 14-15 (1984).  The Hatch-

Waxman Act was designed to stem the rising cost of prescription drugs by bringing less

expensive generic drugs to market faster.

17.    To accomplish this goal, the Hatch-Waxman Act established a framework with

five elements that are pertinent here.

18.    First, a company seeking FDA approval of a new drug must submit a New Drug

Application ("NDA'') to the FDA.  *See* 21 U.S.C. § 355.  A brand-name drug sponsor must also

inform the FDA of every patent that claims the "drug" or "method of using [the] drug" for which

a claim of patent infringement could reasonably be asserted against unlicensed manufacture, use,

or sale of that drug product.  *See* 21 U.S.C. § 355(b)(1); 21 U.S.C. § 355(c)(2); 21 C.F.R.

§ 314.53(b), (c)(2).  Upon approval of the NDA, the FDA publishes a listing of patent

information for the approved drug in a document referred to as the Orange Book.  *See* 21 U.S.C.

§ 355(b)(I). The new FDA-approved drug is known as the "reference-listed drug."

19.    Second, the Hatch-Waxman Act provides a streamlined process for approving

generic drugs.  Before marketing a generic version of an FDA-approved drug, a generic-drug

manufacturer must submit an ANDA to the FDA.  An ANDA is "abbreviated" because

applicants are generally not required to include the extensive preclinical and clinical data that

must be included in an NDA for a brand-name drug.  Instead, the ANDA applicants can rely on

the NDA's preclinical and clinical data if the proposed generic product is "bioequivalent" to the corresponding reference-listed drug.  *See* 21 U.S.C. § 355(j)(4)(F).

20.    An ANDA must also contain one of four certifications for each patent listed in the Orange Book:  (i) that there are no patents listed in the Orange Book;  (ii) that any listed patent has expired;  (iii) that the patent will expire before the generic manufacturer is seeking to market its generic product; or (iv) that the patent is invalid, unenforceable or will not be infringed by the manufacture, use or sale of the generic drug for which the ANDA is submitted.  *See* 21 U.S.C. § 355(j)(2)(A)(vii)(I)-(IV); 21 C.F.R. § 314.94(a)(12).  The last of these is commonly referred to as a "Paragraph IV certification."

21.    An applicant submitting an ANDA containing a Paragraph IV certification must provide formal written notice *(i.e.,* "a notice letter") informing both the patent holder and the NDA holder of its Paragraph IV certification.  *See* 21 U.S.C. § 355(j)(2)(B)(i).

22.    Third, the Hatch-Waxman Act encourages prompt resolution of patent disputes by authorizing a patent owner to sue an ANDA applicant for patent infringement if a Paragraph IV certification has been made.  *See* 35 U.S.C. § 271(e)(2).  By statute, if the patent owner brings suit within 45-days of receiving notice of the Paragraph IV certification, the suit will trigger an automatic statutory 30-month stay of approval by the FDA of the ANDA to allow parties time to adjudicate the merits of the infringement action before the generic company launches its product. *See* 21 U.S.C. § 355(j)(5)(B)(iii).

23.    Fourth, to encourage prompt generic-market entry, the Hatch-Waxman Act grants the first generic applicant to file a substantially complete ANDA containing a Paragraph IV certification ("first-filer") to an Orange-Book-listed patent a 180-day period of marketing exclusivity that begins upon the date it begins commercial marketing of its generic-drug product.

During this 180-day period of exclusivity, the FDA may not approve ANDAs filed subsequent to the first filed ANDA.

24.     Fifth, to curb abuses of the 180-day exclusivity by patent owners and first-filers, whereby the 180-exclusivity is used to block all subsequent ANDA filers from obtaining approval of their respective ANDAs, Congress enacted the Medicare Modernization Amendments to the Hatch-Waxman Act, which provided for various conditions under which a first-filer would forfeit its 180-day eligibility.  *See* 21 U.S.C. § 355(j)(5)(D).  The first of the forfeiture provisions, known as the Failure to Launch provision, provides that 180-day eligibility will be forfeited if a subsequent ANDA filer obtains a judgment of noninfringement as to the patent(s) that confer exclusivity.  *See* 21 U.S.C. § 355(j)(5)(D)(i)(I)(bb)(AA); *see also Daiichi Sankyo,* 781 F.3d at 1360.  As part of that remedy, the Hatch-Waxman Act allows ANDA applicants to bring declaratory-judgment actions asserting noninfringement against any relevant Orange-Book-listed patent if (1) neither the patent owner nor the NDA holder brought an action against the ANDA applicant for infringement of the patent within the 45-day period; and (2) the ANDA applicant's notice of Paragraph IV certification included an offer of confidential access to the ANDA. 21 U.S.C. § 355(j)(5)(C)(i)(I)(aa)-(cc).

25.     If the first-filer does not commercially market the generic drug and none of the MMA forfeiture provisions are triggered (including the entry of a final judgment of non-infringement or invalidity), the first-filer's 180-day exclusivity period will be delayed indefinitely, ultimately blocking final FDA approval of all subsequent ANDAs.  This block is known as "bottlenecking" or the "'statutory block" of a subsequent ANDA.

26.     By authorizing declaratory-judgment actions under these circumstances, Congress intended that full generic competition would not be delayed indefinitely, or blocked, by the first-

filer's 180-day exclusivity.  A declaratory-judgment action by a subsequent ANDA applicant

could result in a court decision that triggers forfeiture of the first-filer's 180-day exclusivity

under 21 U.S.C. § 355(j)(5)(D)(i)(I)(bb)(AA), thereby clearing the way for approval of the

subsequent-filers' bottlenecked ANDAs.

27.     Congress explained the need for civil actions to obtain patent certainty:

> [W]hen generic applicants are blocked by a first generic
> applicant's 180-day exclusivity, the brand drug company could
> choose not to sue those other generic applicants so as to delay a
> final court decision that could ... force the first generic to market.
> In ... these ... circumstances, generic applicants must be able to
> seek a resolution of disputes involving all patents listed in the
> Orange Book with respect to the drug.

*Caraco*, 527 F.3d at 1285 (quoting 149 Cong. Rec. S15885 (Nov. 25, 2003) (remarks of Sen.

Kennedy, ranking member of U.S. Senate Committee on Health, Education, Labor, and

Pensions).

### LILLY BLOCKS AMPHASTAR'S GENERIC ENTRY

**A.  The FDA's Orange Book Lists the '334 Patent**

28.     Lilly requested that the FDA list the '334 Patent in the Orange Book in

connection with its Forteo® NDA as a patent to which "a claim of patent infringement could

reasonably be asserted if a person not licensed by the owner engaged in the manufacture, use, or

sale of the drug" product containing 600mcg/2.4mL (250 mcg/mL) teriparatide in a prefilled pen.

21 U.S.C.§ 355(b)(1), (c)(2).

29.     Lilly is the holder of the approved Forteo® NDA N021318, and caused or

authorized the '334 Patent to be listed in the Orange Book in connection with the Forteo® NDA.

30.     The '334 Patent, entitled "Medication dispensing apparatus with spring-driven

locking feature enabled by administration of final dose," issued on April 14, 2009.  The patent

names Alexander Thomas Jacobs, Jared Alden Judson, and Gordon Davidson Row as inventors, and identifies Lilly as the assignee of record.  A true and correct copy of the '334 Patent is attached hereto as Exhibit A.

31.     The '334 Patent purports to claim a medication dispensing apparatus with specified elements.

32.     At the time of Amphastar's ANDA filing, one patent was listed in FDA's Orange Book as covering Forteo®:  the '334 Patent.  Under the Hatch-Waxman statutory scheme, Amphastar was required to submit patent certification to the '334 Patent.

33.     Amphastar's ANDA contains a Paragraph IV certification that Amphastar's ANDA Product will not infringe the '334 Patent, which the Orange Book lists as having an expiration date of March 25, 2025.  Through its Paragraph IV certification,  Amphastar is seeking immediate approval of its ANDA, prior to expiration of the '334 patent.

### B. The First Paragraph IV Certification for Forteo®

34.     The FDA maintains the identity of the first-filer(s) as confidential.  However, the FDA publishes the date of submission of the first substantially complete ANDA containing a Paragraph IV certification for each drug.  For Forteo®, the FDA identifies the date of submission of the first-filer(s) as July 27, 2015.  *See* Exhibit B.

35.     On information and belief, the first-filer submitted a substantially complete ANDA containing a Paragraph IV certification for 600mcg/2.4mL (250 mcg/mL, 2.4 mL) prefilled teriparatide pens on July 27, 2015, and thus holds eligibility for 180-day marketing exclusivity that prevents all subsequently filed ANDAs (including Amphastar's ANDA) from receiving final approval.  However, absent a judgment by this Court on the '334 Patent, the first-filer(s) will retain eligibility for 180-days of marketing exclusivity indefinitely until (1) it

launches its product or (2) upon expiration of the '334 Patent, thereby blocking Amphastar's market entry.

36.     A publicly available March, 2021 investor presentation by Antares Pharma, a supplier of injection devices, indicates that the filer of an earlier teriparatide ANDA expects to receive 180-day exclusivity upon approval of their submission by the FDA.  In that presentation, Antares states that Teva Pharmaceuticals is "awaiting approval for their ANDA for generic Forteo®" and "[e]xpect[s] six month exclusivity."  *See* Exhibit C.

### C.   Amphastar Applies for FDA Approval of its 600mcg/2.4mL (250 mcg/mL, 2.4 mL) Prefilled Teriparatide Pens

37.     Amphastar submitted ANDA No. 213641 to the FDA seeking approval for the commercial manufacture, use, importation, offer for sale, and sale of a generic version of 600mcg/2.4mL (250 mcg/mL) Forteo® prefilled teriparatide pens.  Amphastar's ANDA contains a Paragraph IV certification that the '334 Patent will not be infringed by the manufacture, use, or sale of Amphastar's prefilled teriparatide pens.  Amphastar submitted its ANDA *after* July 27, 2015, and therefore is a "subsequent filer."  As a subsequent filer, Amphastar is blocked from marketing its 600mcg/2.4mL (250 mcg/mL) prefilled teriparatide pens by the first-filer's exclusivity.

38.     On February 17, 2021, Amphastar sent notice to Lilly, as it was required by law, of Amphastar's Paragraph IV certification regarding the '334 Patent in Amphastar's ANDA and provided an Offer of Confidential Access to its ANDA No. 213641 pursuant to 21 U.S.C. § 355(j)(2)(B)(i) ("notice letter").

39.     Lilly received Amphastar's notice letter no later than February 22, 2021.

40.     In its notice letter, Amphastar provided to Lilly a detailed factual and legal basis for Amphastar's Paragraph IV certification to the '334 Patent, explaining why it would not be

infringed by Amphastar's proposed generic version of 600mcg/2.4mL (250 mcg/mL) prefilled teriparatide pens.  Lilly had a statutory right to bring suit against Amphastar if it believed that Amphastar infringed the '334 Patent, but Lilly chose not to sue Amphastar.  21 U.S.C. § 355(j)(5)(B)(iii).  Having failed to sue Amphastar within a 45-day period following receipt of Amphastar's notice letter, the relevant statute provides Amphastar with a statutory right to bring the present declaratory judgment action for patent certainty.  21 U.S.C. § 355(j)(5)(C)(i)(I)(aa)-(cc).

### D.  Amphastar's Approval is Blocked

41.     Amphastar is prepared to begin commercial marketing of its prefilled teriparatide pens upon FDA marketing approval.  Amphastar's prefilled teriparatide pens, however, will be blocked from receiving final approval and prevented from actually entering the market until the end of any first-filer exclusivity based on the '334 Patent.

42.     As a consequence, absent a judgment from this Court declaring that Amphastar's ANDA Product does not infringe the '334 Patent, Amphastar will be unable to sell its generic 600mcg/2.4mL (250 mcg/mL) prefilled teriparatide pens indefinitely, thereby injuring Amphastar by depriving it of sales revenue that it could earn for that period of time.  *See* 21 U.S.C. § 355(j)(5)(D)(i)(I)(bb).

43.     Were Amphastar free to market its generic 600mcg/2.4mL (250 mcg/mL) prefilled teriparatide pens at the earliest possible date, it would earn substantial profits.

### <u>AN ARTICLE III CASE OR CONTROVERSY EXISTS</u>

44.     There is an actual and ongoing controversy between Amphastar and Lilly with respect to infringement of the '334 Patent that can be resolved by a declaratory judgment from this Court.  A judgment of non-infringement from this Court will trigger forfeiture of the first-

filer's exclusivity, as Congress intended under 21 U.S.C. § 355(j)(5)(D)(i)(I)(bb), thereby allowing Amphastar to bring its generic prefilled teriparatide pens to market at the earliest possible date, and enhancing generic competition.

45.     The present dispute between Amphastar and Lilly presents a justiciable Article III controversy because the plaintiffs have standing and the issues raised are ripe for adjudication and Amphastar is seeking relief through the declaratory judgment mechanism established by Congress to obtain patent certainty. *See, e.g., Caraco,* 527 F.3d at 1278; 35 U.S.C. § 355(j)(5)(C).

46.     Standing requires three elements:  (1) an alleged injury in fact—"a harm suffered by the plaintiff that is 'concrete' and actual or imminent, not 'conjectural' or 'hypothetical'"; (2) causation—"a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant"; and (3) redressability—"a likelihood that the requested relief will redress the alleged injury."  *Caraco*, 527 F.3d at 1291.

47.     Amphastar suffers an injury-in-fact from the ongoing listing of Defendants' '334 Patent in FDA's Orange Book.  The '334 Patent confers 180-day exclusivity eligibility for the first-filer, which will preclude Amphastar from marketing its non-infringing generic prefilled teriparatide pens at the earliest possible date.  Amphastar's injury is unique to the Hatch-Waxman context as compared to ordinary infringement action:  "Ordinarily, a potential competitor in other fields is legally free to market its product in the face of an adversely-held patent.  In contrast, under the Hatch-Waxman Act, an ANDA filer is not legally free to enter the market without FDA approval."  *Caraco*, 527 F.3d at 1291.  Lilly's listing of the '334 Patent in the Orange Book creates the bottleneck to Amphastar's ANDA causing injury-in-fact to Amphastar.  *Id.*

48.     Amphastar's injury is directly traceable to Lilly because it listed the '334 Patent in the Orange Book and chose not to sue Amphastar after receiving a notice of Amphastar's Paragraph IV certification, so as to avoid an adverse judgment.  Lilly benefits financially from the ANDA approval "bottleneck" it has created, because this bottleneck lengthens the duration of Lilly's monopoly over teriparatide prefilled pens.

49.     But for Lilly's actions, final approval of Amphastar's ANDA would not be delayed by any first-filer's 180 day exclusivity.  Lilly's actions cause injury to Amphastar by preventing Amphastar from rightfully marketing and earning revenue on a non-infringing product.

50.     Amphastar's injury is redressable:  judgment of non-infringement of the '334 Patent from this Court will activate forfeiture of the first-filer's exclusivity period as Congress intended, allowing Amphastar to enter the market at the earliest possible date and obtain patent certainty.

51.     Accordingly, there is an actual, substantial and continuing justiciable case and controversy between Amphastar and Lilly, over which this Court can and should exercise jurisdiction and declare the rights of the parties.  *Caraco*, 527 F.3d at 1278.

52.     Whether an action is "ripe" requires an evaluation of "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id* at 1294.  Amphastar satisfies both prongs for ripeness.  *First,* additional factual development would not advance the district court's ability to decide Amphastar's action because Amphastar's ANDA has all the necessary information to determine whether Amphastar's prefilled teriparatide pens infringe the '334 Patent.  *Second,* Amphastar will not be able to obtain patent certainty or FDA approval to market its prefilled teriparatide pens at the earliest possible date without a

13

declaratory judgment: a hardship that creates the potential for substantial lost revenue.

### **AMPHASTAR'S 600MCG/2.4ML (250 MCG/ML) PREFILLED TERIPARATIDE PENS**

53.



## NON-INFRINGEMENT OF THE '334 PATENT

54.     Infringement of a patent under 35 U.S.C. § 271(e)(2) requires a comparison between the patent claims and the ANDA applicant's proposed generic drug.  If any claim limitation is absent from the ANDA applicant's proposed generic drug, there is no infringement as a matter of law.  *Bayer AG* v. *Elan Pharm. Research Corp.,* 212 F.3d 1241, 1247-48 (Fed. Cir. 2000); *Glaxo, Inc.* v. *Novopharm, Ltd.,* 110 F.3d 1562, 1569 (Fed. Cir. 1997).

55.     Amphastar's ANDA contains a Paragraph IV certification that the manufacture, use or sale of Amphastar's generic prefilled teriparatide pens does not and will not infringe the '334 Patent.

### A.  The Claims of the '334 Patent

56.     The '334 patent contains one independent claim.  Claim 1 reads:

> 1. A medication dispensing apparatus comprising:
> a housing;
> a drive member within said housing and movable in a distal
>   direction;
> a fluid container defining a medicine-filled reservoir with a
>   movable piston at one end and an outlet at the other end, said
>   piston engageable by said drive member to be advanced toward
>   said outlet a distance equal to a distal movement of said drive
>   member when said drive member is moved distally:
> a plunger element;
> a gear set including first and second pinions, said gear set pivotal
>   on said plunger element and shiftable proximally and distally
>   with the plunger element;
> a first rack engaged with said first pinion and axially stationary
>   within said housing:
> a second rack engaged with said second pinion and movable within
>   said housing on a piece clutchably connected to said drive
>   member;
> a latching element including a latching lip and a skid;
> said drive member including an axially extending, skid-engaging
>   surface along which said skid is slidable as said drive member
>   passes distally during advancement during plunger element
>   shifting in the distal direction, said skid-engaging surface having
>   an axial length and a proximal end, said drive member along said

15

axial length structured and arranged with said skid so as to maintain said latching lip against a spring force in a first position free of a latchable element disposed on said plunger element during dose preparing and injecting prior to a final dose administration; and

wherein said skid-engaging surface shifts distally of said skid such that said skid passes beyond the proximal end upon administration of a final dose allowing said latching lip to be urged by said spring force from said first position to a second position for engagement with said latchable element to physically lock said plunger element to prevent further dose preparing and injecting.

Exhibit A, '334 patent, cl. 1.

57. The dependent claims of the '334 patent are as follows:

2. The medication dispensing apparatus of claim 1 wherein said proximal end of said skid-engaging Surface comprises a proximal end of said drive member.

3. The medication dispensing apparatus of claim 1 wherein said skid is disposed distally of said latching lip.

4. The medication dispensing apparatus of claim 1 wherein said skid comprises a blade shape member that extends axially, and wherein said latching lip comprises a transversely extending flange.

5. The medication dispensing apparatus of claim 1 wherein said latchable element comprises a ramped distal face over which said latching lip is cammable to reach a latching engagement with said latchable element.

6. The medication dispensing apparatus of claim 1 wherein said latching element is axially fixed to said housing by at least one flange fit into a slot provided in said housing.

7. The medication dispensing apparatus of claim 1 wherein said spring force acting on said latching element comprises a resiliency of said latching element tending to return said latching lip to a neutral arrangement.

8. The medication dispensing apparatus of claim 7 wherein said latching element comprises a one piece metal stamping.

9. The medication dispensing apparatus of claim 1 wherein said skid-engaging surface is smooth.

10. The medication dispensing apparatus of claim 1 wherein said

latching lip comprises a rim along an opening through which a latchable element extends to reach a latching engagement with said latching element.

Exhibit A, '334 patent, cl. 2-10.

**B.** 

58.    Independent claim 1 is directed to a medication dispensing apparatus comprising a number of different elements.  Further, Claim 1 contains a number of limitations that are directed to the medication dispensing apparatus utilizing a plunger element, gear sets, pinions, and racks.  Specifically, the claim limitations read:

> 1. A medication dispensing apparatus comprising:
> ...
> a plunger element;
> a gear set including first and second pinions, said gear set pivotal on
>     said plunger element and shiftable proximally and distally with the
>     plunger element;
> a first rack engaged with said first pinion and axially stationary
>     within said housing:
> a second rack engaged with said second pinion and movable within
>     said housing on a piece clutchably connected to said drive member

'334 patent at 9:56-10:13 (Claim 1).

59.    Figure 2 of the '334 patent is a cross-sectional view of an embodiment containing a "gear set" (52):



**Fig. 2**

17

*See* '334 patent at 2:41-45, 4:18-20, 6:50-55.

60.    Figure 6, Figure 7, and Figure 8 of the '334 patent show sections of an

embodiment containing a first "pinion" (160) and a second "pinion" (166):



**Fig. 6**



**Fig. 7**



**Fig. 8**

*See* '334 patent at 2:54-67, 6:56-65.

61.    Figure 4 of the '334 patent shows a first "rack" which is "fixed or axially stationary" (84):



**Fig. 4**

*See* '334 patent at 2:49-51, 5:1-3.

62.     Figure 8 of the '334 patent (*supra* ¶ 60) shows a second "rack" (80), the "drive member rack **80**, which rack is parallel to and disposed on the same side of the pinion axis as rack **84**." *See* '334 patent at 7:6-8, 7:19-28.

63.



21



64.



65.     Independent Claim 1 also provides that the claimed medication dispensing

apparatus possess a latching element that includes a latching lip and skid.  Specifically, the claim

requires:

> 1. A medication dispensing apparatus comprising:
> ...
> a latching element including a **latching lip and a skid**;
> said drive member including an axially extending, skid-engaging
>     surface along which said skid is slidable as said drive member
>     passes distally during advancement during plunger element
>     shifting in the distal direction, said skid-engaging surface having
>     an axial length and a proximal end, said drive member along said
>     axial length structured and **arranged with said skid so as to
>     maintain said latching lip against a spring force** in a first
>     position free of a latchable element disposed on said plunger

23

element during dose preparing and injecting prior to a final dose
administration; and

wherein said skid-engaging surface shifts distally of said skid such
that **said skid passes beyond the proximal end upon
administration of a final dose allowing said latching lip to be
urged by said spring force** from said first position to a second
position for engagement with said latchable element to physically
lock said plunger element to prevent further dose preparing and
injecting.

Exhibit A, '334 patent, cl. 1.

66.     Figure 9 of the '334 patent shows a "latch lip" (186) and an "upstanding lip"

(117):



**Fig. 9**

67.     Figure 10 and Figure 11 also show the "latch lip" (186):



**Fig. 10**



**Fig. 11**

*See* '344 patent at 7:35-8:56.

68.     Figure 13 shows the "rims" (240) which "serve as a pair of latching lips" and the "skid" (236):

26



**Fig. 13**

'334 patent at 8:31-39.



69.



70.    Accordingly, Amphastar's ANDA Product cannot infringe Claim 1, either literally or under the doctrine of equivalents.

### c.  Claim 2-10

71.    Claims 2-10 depend from Claim 1.  If an accused product does not infringe an independent claim, it does not infringe any claim that depends therefrom.  For at least the reasons discussed with respect to Claim 1, Amphastar's ANDA Product cannot infringe any of Claims 2-10, either literally or under the doctrine of equivalents.

### CAUSES OF ACTION

### COUNT I – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF AMPHASTAR'S GENERIC 600MCG/2.4ML (250MCG/ML) PREFILLED TERIPARATIDE PENS

72.    Amphastar hereby incorporates by reference its allegations contained in paragraphs 1 through 71 of this Complaint as though fully set forth herein.

73.    This claim arises under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Hatch-Waxman Act, 21 U.S.C. §355(j)(5)(C).

74.    Lilly listed the '334 Patent in the Orange Book as covering its Forteo® 600mcg/2.4mL (250 mcg/mL) prefilled teriparatide pens.

75.    Amphastar filed an ANDA with a Paragraph IV certification stating the '334

Patent is not and will not be infringed by Amphastar's 600mcg/2.4mL (250 mcg/mL) prefilled teriparatide pens.

76.     Amphastar intends to sell its generic 600mcg/2.4mL (250 mcg/mL) prefilled teriparatide pens, as described in ANDA No. 213641 once it obtains final FDA approval.

77.     There is a real, actual and continuing justiciable case and controversy between Amphastar and Lilly regarding the infringement of the '334 Patent by Amphastar's generic 600mcg/2.4mL (250 mcg/mL) prefilled teriparatide pens.

78.     The '334 Patent will not be infringed by Amphastar's filing of ANDA No. 213641 or the manufacture, use, offer for sale, sale, and/or importation of Amphastar's generic 600mcg/2.4mL (250 mcg/mL) prefilled teriparatide pens that are described in ANDA No. 213641, either directly or indirectly under 35 U.S.C. § 271.

79.     Accordingly, Amphastar seeks and is entitled to a judicial declaration that the manufacture, use, offer for sale, sale, and or importation of Amphastar's 600mcg/2.4mL (250 mcg/mL) prefilled teriparatide pens , described in ANDA No. 213641, do not and will not infringe, directly or indirectly, any valid claim of the '334 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Amphastar prays for a declaratory judgment against Lilly as follows:

a.  Judgment against Lilly declaring that the '334 Patent is not and will not be infringed by Amphastar's submission of ANDA No. 213641;

b.  Judgment against Lilly declaring the manufacture, marketing, use, offer for sale, sale, and or importation of Amphastar's generic 600mcg/2.4mL (250 mcg/mL) prefilled teriparatide pens described in ANDA No. 213641 do not infringe and will not, if marketed, used, offered for sale, or sold, infringe or induce or contribute to the

infringement of any valid claim of the '334 Patent;

c.   Awarding Amphastar its costs, expenses and reasonable attorneys' fees pursuant to 35

U.S.C. § 285; and

d.   Awarding Amphastar such other and further relief as the Court deems just and

reasonable.

Dated: June 29, 2021                                 Respectfully submitted,

                                                     AMPHASTAR PHARMACEUTICALS, INC.

                                                     */s/* Darren A. Craig
                                                     Darren A. Craig, No. 25534-49
                                                     FROST BROWN TODD, LLC
                                                     201 North Illinois Street, Suite 1900
                                                     P.O. Box 44961
                                                     Indianapolis, IN 46204-4236
                                                     (317) 237-3800
                                                     dcraig@fbtlaw.com

Of Counsel:

John T. Bennett (*pro hac vice pending*)
JBennett@goodwinlaw.com
Andrew S. McDonough (*pro hac vice pending*)
AMcdonough@goodwinlaw.com
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.: (617) 570-1000
Fax: (617) 523-1231

Natasha E. Daughtrey (*pro hac vice pending*)
NDaughtrey@goodwinlaw.com
GOODWIN PROCTER LLP
601 South Figueroa Street
Suite 4100
Los Angeles, CA 90017
Tel.: (213) 426-2500
Fax: (213) 623-1673

Cindy Chang (*pro hac vice pending*)
(cindychang@goodwinlaw.com)
GOODWIN PROCTER LLP
620 8th Avenue
New York, New York 10018
Tel.: (212) 813-8800
Fax: (212) 355-3333

*Attorneys for Plaintiff Amphastar Pharmaceuticals, Inc.*